INHABITANTS OF CORNISH *versus* SIMEON PEASE.

In pursuance of an article in the warrant calling the meeting, for that purpose, the town at a legal meeting voted to invest the surplus revenue in bank stock — and chose an agent to carry the vote into effect — such agent, having disposed of the money as he was authorized by the vote, was held discharged from all responsibility.

When an offer to purchase of the town the bank stock, was made in town meeting, which was accepted by vote of the town — but there was no article in the warrant calling the meeting by which the town was authorized to make such contract — it was held, that by St. 1821, c. 114, § 5, such a contract was void.

ASSUMPSIT for money had and received, and on a special contract.

At the trial before EMERY J. it was proved, subject to all legal objections, that at a regular town meeting, held April 3, 1837, the defendant was present and recommended the town to invest their surplus revenue money in bank stock in some safe bank — saying that the town would receive therefor eight per

Cornish *v.* Pease.

cent. interest for their money — and that whenever the town should become dissatisfied with having it in bank stock — he would take it off their hands and pay them the money and six per cent. interest, or find some one to do it — that these statements were made in open town meeting, before the defendant was chosen agent, as is hereinafter stated.

At this meeting, in pursuance of an article in the warrant, " to see what method the town will take, respecting the surplus money," the defendant was chosen agent to receive the surplus money and therewith to purchase bank shares at par or less. The defendant, in pursuance of this authority, received the surplus money and with it, on the second day of May, 1837, purchased sixteen shares in the City Bank, Portland.

At a meeting held on the 11th Sept. 1837, by adjournment from May 19, in pursuance of articles in the warrant for that purpose, it was voted " to dismiss the defendant from acting as agent," and " that sixteen shares of the bank stock remain in said bank until they will sell at par, or for what they cost, or until further action be had."

The seventh article in the warrant calling the town meeting, which was held on the 2d day of April, 1838, was " to see if the inhabitants will divide the surplus money belonging to said town according to the census taken in 1837."

At this meeting, the defendant stated in the meeting, that if the town would wait on him till October then next, he would pay over the money he had received of the town and take the bank shares to himself — and pay six per cent. interest for the money. Upon this, the following vote was passed, — " Vote 7th, voted to distribute the surplus money agreeably to the census of 1837." " Voted to accept Simeon Pease's promise to pay to the town of Cornish sixteen hundred and ten dollars and six dollars on the hundred for the use of said money, in October next, and said if they were not satisfied with his security he would get bondsmen. He made the promise in consideration that he was to have the sixteen bank shares in City Bank of Portland, that stands to the credit of the town of Cornish,

and the balance due, after buying the shares, was put to his own account."

It appeared, that Jan. 28, 1839, an agent was chosen to demand the money of the defendant — that the agent demanded the money and at the same time offered to go to Portland any day the defendant wished, and transfer the shares — and that to this the defendant replied, that the time had . expired in which he agreed to pay the money — and that he should do nothing about it.

It appeared, that there was a balance remaining in the defendant's hands, after deducting what had been paid for the bank shares, to the amount of $16,10, for which the defendant had offered to be defaulted.

The cause was tried before Emery J. and upon these facts being proved, a default was entered, with an agreement, that such judgment should be rendered as in the opinion of the whole Court should be proper.

*Clifford* and *Jamieson,* for the defendant. Pease was duly chosen agent with authority to invest the surplus revenue belonging to the town. He would be liable unless he was duly chosen agent, or his acts were subsequently ratified. A corporation is bound by the acts of its agent. *Salem Bank* v. *Gloucester Bank,* 17 Mass. R. 1 ; *Wyman* v. *Hallowell &amp; Augusta Bank,* 14 Mass. R. 58. If not agent, if his acts have been adopted, they will be binding on his principal. *Herring* v. *Polley,* 8 Mass. R. 113 ; *Kupfer* v. *South Parish in Augusta,* 12 Mass. R. 185 ;. *Pratt* v. *Putnam,* 13 Mass. R. 361 ; *Warren* v. *Ocean Ins. Co.* 16 Maine R. 439 ; *Pittston* v. *Clark,* 15 Maine R. 460 ; *Penobscot Boom Cor.* v. *Lamson,* 15 Maine R. 224. The defendants have recognized the agency of Pease by their vote of Sept. 11, 1837, and at subsequent meetings. If so, he is not liable.

He is not liable by virtue of any promise. The only promise made, if any, was at the meeting had April 3, 1837 — but that was not accepted. Nor could that be called a promise — it was merely advisory, and he had a right to advise without rendering himself personally liable therefor.

Parol evidence was not admissible to prove the proceedings at the meeting held April 2, 1838. *Moor* v. *Newfield,* 4 Greenl. 44. These could only be proved by record. *Thayer* v. *Stearns,* 1 Pick. 109 ; *Owings* v. *Speed,* 5 Wheat. 420. The vote of that date was not binding on the town, it not being made in pursuance of any article in the warrant. *Davenport* v. *Hallowell,* 1 Fairf. 323 ; *Chamberlain* v. *Dover,* 13 Maine R. 466, nor on the defendant, the offer being without consideration.

The town had a right to appropriate the money as they have done. Towns can purchase farms for the poor — they may equally well purchase stock, the interest of which shall constitute a fund for their support. By St. 1838, c. 311, the mode of investment was left to the discretion of the town. *Baker* v. *Windham,* 13 Maine R. 74 ; *Davis* v. *Bath,* 17 Maine R. 141 ; *Augusta* v. *Leadbetter,* 16 Maine R. 47 ; St. 1821, c. 122, § 3.

*Howard,* for the plaintiff.

1. Towns derive all their powers as well as their existence from legislative enactments. *The People* v. *The Utica Ins. Co.* 5 Johns. 358. Towns are *quasi* corporations having many of the incidents of corporations aggregate, and the whole interest in them belongs to the public. They are public corporations created for political purposes. 2 Kent's Com. 279 ; *Hayden* v. *Middlesex Turnpike Corporation,* 10 Mass. R. 397 ; *Clark* v. *The Corporation of Washington,* 12 Wheat. 40 ; *Bank of Columbia* v. *Palmer's Adm'r.* 7 Cranch, 299 ; *Dartmouth College* v. *Woodward,* 4 Wheat. 518 ; *Bank of U. S.* v. *Dandridge,* 12 Wheat. 64.

Statute of 1821, c. 114, § 6, authorizes the raising of money for the support of the ministry, schools, the poor and other necessary charges arising within the town. By subsequent statute, the power in certain cases of assessing money for making and repairing highways, and for certain other definite purposes, is granted. An assessment for purposes not authorized by statute is illegal. *Stetson* v. *Kempton & al.,* 13 Mass. R.

272; *Dillingham* v. *Snow & al.*, 5 Mass. R. 547; *Bussey* v. *Gilmore*, 3 Greenl. 191; *Hooper* v. *Emery*, 14 Maine R. 275.

2. By the statute of 1837, c. 265, § 18, respecting the surplus revenue, the money received could only be appropriated in the same manner as money raised by taxation, or be loaned on safe and ample security. Under the Stat. 1838, c. 311, § 2, the surplus revenue might be distributed *per capita.* But this money was appropriated in neither of these modes.— Money cannot be raised by taxation to buy bank stock, and consequently the money was not legally appropriated.

3. All acts or votes of the town, transcending their corporate powers, are inoperative, and can confer no rights on any one. No one can justify under such vote, nor would it even bind the town — for the citizens of the town cannot lose their rights or property by an unauthorized vote of the town. *Pittston* v. *Clark,* Maine R. 462; *Bank of Augusta* v. *Earle,* 13 Pet. 529; *Parsons* v. *Goshen,* 11 Pick. 396; *School District in Greene* v. *Bailey,* 3 Fairf. 254.

4. Towns cannot authorize their agents to do what they have no right to do. 2 Kent's Com. 292. To constitute an agency there must be a legal vote. Nor can the agent be authorized to do an illegal act. The authority given would be void, and the act would not be binding upon the principal. *U. S.* v. *Lyman,* 1 Mass. R. 504; *Johnson & al.* in error v. *U. S.* 5 Mass. R. 441; *The Margaretta,* 2 Gall. 515; *Parsons* v. *Armor & al.,* 3 Pet. 428. The very idea of an agent, is one employed to do an act for another, which the latter might do for himself. Story's Agency, 3 Com. Dig. Attorney, A. 2 Kent's Com. 613; *Salem Bank* v. *Gloucester Bank,* 17 Mass. R. 29. The plaintiffs could not authorize the defendant to purchase bank stock, and his purchase was without justification. The town cannot raise money to buy bank stock, any more than they could to invest it in lottery tickets, rail roads or factory stock.

Nor can there be any ratification — for a void act cannot be

ratified. Story's Agency, 236, 241 ; *Hooper* v. *Emery*, 14 Maine R. 375.

5. The defendant is liable on the money counts — for money had and received. The defendant received the money, and illegally disposed of it, and has refused, on demand, to repay it. Purchasing the bank stock without authority, the purchase should be considered as made with his funds.

He is liable, and on the special contracts stated in the other counts, and proved by the testimony. These contracts are founded upon good consideration — a moral obligation arising from the promise at the April meeting, 1837—the delay at the defendant's request — the surplus money remaining in his hands — the town orders drawn upon this fund, of which he received his proportion.

The opinion of the Court was delivered by

Weston C. J. — In pursuance of a regular town meeting, held April third, 1837, the warrant for which, among other things, contained an article, " to see what method the town will take respecting the surplus money," the inhabitants of Cornish voted that the defendant be appointed agent to receive the surplus revenue money, and by the same vote, they authorized him to purchase therewith bank shares, at par or less. This vote was warranted by the article, under which it passed. In virtue of it, the defendant received the first and second instalments of the surplus moneys to which the town was entitled, and on the second day of May, 1837, he invested the proceeds, with the exception of a fraction, which was not sufficient to purchase an additional share, in the stock of the City Bank in Portland.

Having received and disposed of the money, as authorized by the vote, he thereby discharged himself from responsibility, unless he has violated any legal agreement, by which he bound himself to purchase of them the stock in question. The town claim to charge him upon this ground. And they rely upon certain declarations and propositions, made by him in town meeting. The first was at the meeting held on the third

of April, 1837. He then recommended the purchase of bank stock, as a safe and profitable mode of investment; and went so far as to say, that when the town became dissatisfied with having it in bank stock, he would take it off their hands, or procure some other person to do it. If a negotiation or agreement of this kind was warranted by the article, under which they were acting, it was not accepted by the town. No agreement was then made to this effect, binding upon either party.

On the second day of April, 1838, another town meeting was held, in virtue of a legal warrant, the seventh article of which was, " to see if the inhabitants will divide the surplus money, belonging to said town, according to the census taken in 1837." When this article was under consideration, the defendant is proved to have said, that if the town would wait upon him, until October then next, he would pay over the money, and take the bank· shares to himself, with six per cent. on the money he had received. Thereupon the town voted in effect to accept this proposition, which was recited in their vote. If the inhabitants then assembled, were duly authorized to bind the town, the terms of the agreement, and the assent of both parties, are sufficiently proved. But with a view to a just limitation of the powers of a town at their public meetings, it is provided by law, that " no matter or thing shall be acted upon, in such a manner as to have any legal operation whatever, unless the subject matter thereof be inserted in the warrant for calling the meeting." Statute of 1821, c. 114, § 5. Now whether this agreement was provident or improvident, beneficial to the town or otherwise, there was no article in the warrant calling that meeting, by which it was authorized. If the operations of the bank had been ever so profitable, or however much their stock might have appreciated, the defendant had no remedy to enforce the agreement, indicated by a vote of the meeting, not legally binding upon the town. If the town were not bound, the defendant could not be, for the consideration, for the agreement he proposed was an agreement on their part. The defendant offered to be defaulted, for the amount by him received, over what was invested in the purchase

of the bank stock. The opinion of the court is, that upon the facts reported, the claim of the plaintiffs, beyond that sum, has not been sustained ; and the default is to stand, as upon the defendant's offer.